UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAKINA VE KIMYA ENDUSTRISI A.S,<br><br>                                Plaintiff,<br><br>- against -<br><br>A.S.A.P. LOGISTICS LTD, ASAP LOJISTIK VE SAVUNMA TICARET LIMITED SIRKETI D/B/A ASAP LOGISTICS AND DEFENSE AND/OR ASAP LOGISTICS AND DEFENSE GUVENLIK HIZMETLERI SANAYI VE TICARET LIMITED SIRKETI, TURKKEY CAPITAL KURUMSAL FINANS COZUMLERI LIMITED SIRKETI D/B/A TURKKEY CAPITAL KURUMSAL FINANS COZUMLERI LIMITED SIRKETI; DEBORAH CROSS, GÜVEN ACARER, TÜRKER KÜÇÜKER & İLKER KÜÇÜKER.<br><br>                                Defendants. | Case No.: _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Makina ve Kimya Endustrisi A.S ("MKE"), by its counsel, Nixon Peabody LLP, bring this Complaint to redress, among other things, Defendants A.S.A.P. Logistics LTD "ASAP US"), ASAP Lojistik Ve Savunma Ticaret Limited Şirketi d/b/a Logistics and Defense and/or ASAP Logistics and Defense Güvenlik Hizmetleri Sanayi Ve Ticaret Limited Şirketi ("ASAP Turkey") (collectively "ASAP"), Turkkey Capital Kurumsal Finans Çözümleri Limited Şirketi d/b/a Turkkey Capital Kurumsal Finans Çözümleri Limited Şirketi ("TC"), Deborah Cross ("Ms. Cross"), Güven Acarer ("Mr. Acarcer"), Metin Nerkiş (Mr. Nerkiş), Türker Küçüker and İlker Küçüker (collectively "the Küçükers") (collectively "Defendants") blatant acts of willful unfair competition and unfair and deceptive trade practices as follows:

1

## JURISDICTION AND VENUE

1. This is an action at law and in equity for unfair competition, and deceptive trade practices arising under the Lanham Act, 15 U.S.C. § 1125, *et seq.*, the unfair and deceptive trade practices laws of the several states, including the New York General Business Law § 349(a); and common law.

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because MKE's federal claims arise under the Lanham Act, 15 U.S.C. § 1125, *et seq.* This Court has jurisdiction over MKE's related state law and common law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367.

3. Additionally, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a) because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

4. Upon information and belief, this Court has personal jurisdiction over ASAP US because ASAP US has its principal place of business in this jurisdiction.

5. Upon information and belief, this Court has personal jurisdiction over Ms. Cross because she resides in this district and/or because she routinely conducts, solicits, and/or transacts business within this judicial district and elsewhere in the State of New York, derives substantial revenue from the sale, distribution, and/or manufacture of products within this judicial district and elsewhere in the State of New York, and/or has otherwise made or established constitutionally sufficient contracts in the State of New York to permit this Court's exercise of personal jurisdiction.

6. Upon information and belief, this Court has personal jurisdiction over ASAP Turkey, TC, Mr. Acarer , Mr. Nerkiş,and the Küçükers because they routinely conduct, solicit,

and/or transacts business within this judicial district and elsewhere in the State of New York, derive substantial revenue from the sale, distribution, and/or manufacture of products within this judicial district and elsewhere in the State of New York, and/or have otherwise made or established constitutionally sufficient contracts in the State of New York to permit this Court's exercise of personal jurisdiction.

7. Upon information and belief, this Court also has personal jurisdiction over ASAP Turkey, TC, Mr. Acarer, Mr. Nerkiş, and the Küçükers because they derive substantial revenue from international commerce and reasonably expected their tortious conduct to have consequences in this jurisdiction.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the acts complained of herein occurred in this judicial district and each party is subject to personal jurisdiction in this judicial district.

## THE PARTIES

9. MKE is a Turkish company formed under the laws of Turkey, having its principal place of business in Ankara, Turkey.

10. Upon information and belief, and as set forth by the New York Secretary of State, ASAP US is incorporated under the laws of New York and has its principal place of business at 14789 Farmers Boulevard, Jamaica, New York, 11434.

11. Upon information and belief, ASAP Turkey is a Turkish company formed under the laws of Turkey, having its principal place of business at Yeşilköy Mh, Dünya Ticaret Merkezi, EGS, Business Park B2 Blok, Kat: 2 No: 139-140 Yeşilköy Bakırköy, İstanbul, Turkey.

12. Upon information and belief, TC is a Turkish company formed under the laws of Turkey, having its principal place of business at Akşemsettin Mah., Zülali Çeşmesi Sokak, No: 6/A Fatih, Istanbul, Turkey.

13. Upon information and belief, Ms. Cross is the President of, and has an ownership interest in, ASAP, is a United States Citizen, and is domiciled in New York.

14. Upon information and belief, Mr. Nerkiş has an ownership interest in ASAP, and is a Turkish citizen domiciled in Turkey.

15. Upon information and belief, Mr. Acarer has an ownership interest in ASAP, and is a Turkish citizen domiciled in Turkey.

16. Upon information and belief, Türker Küçüker is an owner of TC, is a Turkish citizen, and resides at Basinköy Mah. Özer Sk. C Blok No:1 İç Kapı No:2 Bakırköy, Istanbul, Turkey.

17. Upon information and belief, İlker Küçüker is an owner of TC, is a Turkish citizen, and resides at Ferahevler Mah. Filiz Sok. No: 29, İç kapı No: 3, Sarıyer, Istanbul, Turkey.

18. Upon information and belief, TC is an agent of ASAP.

19. On information and belief, ASAP US, ASAP Turkey, Ms. Cross, Mr. Acarer, and Mr. Nerkiş do not follow corporate formalities, act as agents of one another, and co-mingle assets and liabilities.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

20. MKE is the leading provider of military products in Turkey.

21. MKE has transacted business under the name MKE since 1950.

22. MKE uses the wordmark "MKE" (the "MKE Mark") and its distinctive logo (the "MKE Logo"), shown below, as source identifiers for its military products.



23. MKE also takes part in the international defense industry by manufacturing and exporting military products to more than 40 countries worldwide, including the United States.

24. MKE has been continuously using the MKE Mark and the MKE Logo as source identifiers for its products in United States commerce since 1963.

25. MKE Mark and MKE Logo are valid and protectable marks.

26. MKE has invested substantial time and resources to enhance its brand recognition, goodwill and customer perception of its high quality military products.

27. As a result of MKE's actions, MKE has developed a valuable brand and the MKE Mark and MKE Logo have substantial goodwill and public recognition in the United States and around the world and serve as exclusive identifiers of the high quality products manufacture and exported by MKE.

28. MKE has realized millions of dollars' worth of revenue offering and selling its products under the MKE Mark and MKE Logo in the United States.

29. MKE distributes its products in the United States and in other countries through authorized distributors.

30. TC was an authorized distributor of MKE products in the territory of South Korea through April of 2022.

31. TC was not authorized to distribute products in locations other than South Korea, nor was TC authorized to award MKE distributorships to third parties on behalf of MKE.

32. On information and belief, ASAP is a freight forwarder and customs broker.

33. In or around early to mid-2021, amidst a global ammunition shortage, Defendants began approaching ammunition buyers to inform them that ASAP had available for sale large quantities of MKE ammunition.

34. Defendants falsely represented that ASAP was working with an authorized MKE distributor, TC, to provide MKE ammunition to purchasers.

35. TC and ASAP executed a knowingly fraudulent Letter of Intent asserting that TC was authorized by MKE to cooperate with ASAP Turkey to export MKE products from Turkey. Exhibit A.

36. TC is not authorized to distribute MKE products in Turkey, nor is it authorized to export MKE products from Turkey.

37. Defendants provided the fraudulent Letter of Intent to potential buyers to support the false assertions that she and ASAP were authorized to promote, export, and import various MKE products in Turkey and other countries, including the United States.

38. ASAP further represented that as of 2022, ASAP would be the exclusive dealer of MKE ammunition.

39. MKE has never communicated with Ms. Cross or ASAP.

40. ASAP US and ASAP Turkey are not authorized distributors of MKE products, have never been authorized distributors of MKE products, and are not authorized to act on MKE's behalf.

41. Upon information and belief, Defendants entered into deals with ammunition purchasers wherein ASAP agreed to provide quantities of MKE-branded ammunition worth several million dollars, extracted down payments from purchasers to purportedly secure their orders, and then Defendants never provided MKE ammunition.

42. Upon information and belief, ASAP provided purchasers with corporate offers (the "Offers") that asserted that it was ASAP's "intention to SELL, and we hereby confirm that we are **ready, willing, and able to** SELL" millions of dollars-worth of MKE ammunition. Exhibit B at 1 (emphasis in original).

43. For example, in one Offer, ASAP asserted it was willing and able to sell 50 million rounds of MKE 9mm x 19 rounds at $0.15 per round, for a total contract value of $7,500,000.00.  *Id.*

44. This Offer further asserted that the stock of the ammunition that was the subject of the Offer was ready and available.  *Id.*

45. This Offer included, among other things, the MKE Mark and MKE Logo.  *Id.* at 3.

46. On information and belief, ASAP sent invoices to purchasers for millions of dollars-worth MKE ammunition.  Exhibit C.

47. On information and belief, ASAP demanded purchasers put down a deposit to secure the purported MKE ammunition, with the balance of the invoice due on receipt of the ammunition.  *Id.*

48. ASAP did not, however, have possession of, access to, or the ability to provide any quantity of MKE ammunition.

49. On information and belief, Defendants collected money from purchasers who believed they were making deposits to ASAP to secure their orders of MKE ammunition.

50. On information and belief, ASAP did not intend to supply any quantity of MKE ammunition to any purchasers.

51. On information and belief, purchasers relied on ASAP's false representations concerning ASAP's association with MKE, false representations that ASAP bolstered by, among other things, use of the MKE Mark and MKE Logo.

52. On information and belief, purchasers relied the fraudulent representations made by ASAP that ASAP could supply MKE ammunition and purchasers suffered financial and reputational harm as a result.

53. MKE has been harmed as a result of a purported duly authorized MKE distributor not fulfilling agreed-to and paid-for ammunition orders.

54. On information and belief, TC and the Küçükers are acting in concert with ASAP and have benefited from ASAP's fraudulent activities.

55. On information and belief, Defendants advertised and purported to offer MKE ammunition for sale at prices below that at which comparable ammunition could be purchased.

56. Indeed, Defendants purported to offer MKE ammunition for sale at prices below the price at which MKE was selling the same ammunition.

57. ASAP's false representations have negatively impacted the ammunition market.

58. In particular, ASAP's false statements that ASAP has MKE ammunition available for sale at prices lower than those being offered by MKE have harmed MKE's business.

## FIRST CLAIM FOR RELIEF
**(Federal Unfair Competition)**

59.     MKE repeats and incorporates by reference the allegations contained in paragraphs 1-58 above as though fully set forth herein.

60.     Defendants' use in interstate commerce of MKE's Name and MKE's Logo in connection with their advertisement of ammunition and/or other military goods has caused and will continue to cause likely confusion, or to cause mistake, or to deceive or to deceive as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Defendants.

61.     Defendants have used, and continue to use, MKE's Name and MKE's Logo, thereby creating a false designation of origin in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), and Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and public deception in the marketplace, and injury to MKE's goodwill and reputation as symbolized by the MKE Mark and the MKE Logo, for which MKE has no adequate remedy at law.

62.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the MKE Mark and MKE Logo, thereby causing immediate, substantial, and irreparable injury to MKE.

63.     Defendants have caused, and are likely to continue causing, substantial injury to the public and to MKE, and MKE is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, reasonable attorneys' fees and costs, treble damages pursuant to 15 U.S.C. §§ 1116, 1117, and 1125.

## SECOND CLAIM FOR RELIEF
**(Common Law Unfair Competition)**

64. MKE repeats and incorporates by reference the allegations contained in paragraphs 1-63 above as though fully set forth herein.

65. Defendants' use in interstate commerce of the MKE Mark and MKE Mark in connection with the sale, offering for sale, distribution, or advertising of or in connection with Defendants' goods and services has caused likely confusion, or to cause mistake, or to deceive, by creating the false and misleading impression that Defendants' goods and services are associated or connected with MKE, or are sponsored by, endorsed by, or approved by MKE.

66. Defendants' activities constitute common law unfair business competition, and have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and public deception in the marketplace, and injury to MKE's goodwill and reputation as symbolized by the MKE Mark and MKE Logo, for which MKE has no adequate remedy at law.

67. On information and belief, Defendants have acted with full knowledge of MKE's use of, and common law rights to, the MKE Mark and MKE Logo and without regard to the likelihood of confusion of the public created by Defendants' activities.

68. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with MKE's Mark and Logo, thereby causing immediate, substantial, and irreparable injury to MKE.

69. Defendants have caused, and are likely to continue causing, substantial injury to the public and to MKE, and MKE is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, reasonable attorneys' fees and costs. In addition, based on Defendants' willful, and malicious use of the MKE Mark and MKE Logo, and

the need to deter Defendants from similar conduct in the future, MKE is entitled to punitive and multiple damages.

### THIRD CLAIM FOR RELIEF
**(State Unfair and Deceptive Trade Practices)**

70. MKE repeats and incorporates by reference the allegations contained in paragraphs 1-69 above as though fully set forth herein.

71. Defendants have been passing off, and continue to pass off, their goods and services as those of MKE's, causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of Defendants' goods and services, causing a likelihood of confusion as to Defendants' affiliation, connection, or association with MKE, and/or otherwise damaging MKE and the public. Defendants' conduct constitutes unfair and deceptive acts in the conduct of business, trade, commerce or in the furnishing of services in violation of New York General Business Law § 349.

72. Defendants' unauthorized use of the MKE Mark and MKE Logo has caused and is likely to cause substantial injury to the public and to MKE, and MKE is entitled to injunctive relief and to recover damages, punitive case, costs, and reasonable attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Makina ve Kimya Endustrisi A.S prays that:

(1) The Court enters a judgment that Defendants have engaged in unfair competition pursuant to the Lanham Act, 15 U.S.C. § 1125(a) and/or common law;

(2) The Court enters a judgment that Defendants have engaged in unfair and deceptive trade practices pursuant to N.Y. Gen. Bus. Law § 349;

(3) Defendants and each of its agents, officers, employees, representatives, successors, assign, attorneys, and all other person acting for, or on behalf of,

       Defendants, or in concert or participation with Defendants, be preliminarily and permanently enjoined from:

       (a)    Using the MKE Mark and MKE Logo and any other confusingly similar copy, reproduction, colorable imitation, or simulation of MKE's Mark and MKE's Logo on or in connection with Defendants' goods or services;

       (b)    Using any trademark, service mark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods or services that is a confusingly similar copy, reproduction, colorable imitation, or simulation of MKE's Mark and Logo;

       (c)    Using any trademark, service mark, name, logo, design, or source designation of any kind or in connection with Defendants' goods or services that is likely to cause confusion, or to cause mistake, or to deceive, or public misunderstanding that such goods or services are produced or provided by MKE, or are sponsored or authorized by MKE, or are in any way connected or related to MKE;

(4)    MKE be awarded all damages caused by the acts forming the basis of this Complaint, including without limitation Defendants' profits, MKE's customers' damages, and MKE's actual damages;

(5)    Based on MKE's knowing and intentional use of confusingly similar, identical versions of the MKE Mark and Logo, the damages award be trebled and the award of Defendants' profits be enhanced as produced for by 15 U.S.C. § 1117(a) and N.Y. Gen. Bus. Law § 349(h);

(6) Defendants be required to pay to MKE the costs of this action and MKE's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and N.Y. Gen. Bus. Law § 349(h);

(7) Based on Defendants' willful, deliberate, and fraudulent, use of the MKE Mark and Logo, and to deter such conduct in the future, MKE be awarded punitive damages; and

(8) Grant all such other and further relief to MKE as the Court may need just

Dated: May 13, 2022

    Respectfully submitted,

    **NIXON PEABODY LLP**

    By: /s/ Daniel A. Schnapp
    Daniel A. Schnapp
    Alper Tosun
    55 W. 46th Tower 46
    New York, New York 10036
    Telephone: (212) 940-3000
    dschnapp@nixonpeabody.com
    atosun@nixonpeabody.com

    *Attorneys for Plaintiff*