UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAKINA VE KIMYA ENDUSTRISI A.S,<br><br>            Plaintiff,<br><br>    - against -<br><br>A.S.A.P. LOGISTICS LTD, ASAP LOJISTIK VE SAVUNMA TICARET LIMITED SIRKETI D/B/A ASAP LOGISTICS AND DEFENSE AND/OR ASAP LOGISTICS AND DEFENSE GUVENLIK HIZMETLERI SANAYI VE TICARET LIMITED SIRKETI, TURKKEY CAPITAL KURUMSAL FINANS COZUMLERI LIMITED SIRKETI D/B/A TURKKEY CAPITAL KURUMSAL FINANS COZUMLERI LIMITED SIRKETI; DEBORAH CROSS, GÜVEN ACARER, TÜRKER KÜÇÜKER & İLKER KÜÇÜKER.<br><br>            Defendants. | Case No.: 1:22-cv-03933 |

**PLAINTIFF MAKINA VE KIMYA ENDUSTRISI A.S'S
RESPONSE TO ORDER TO SHOW CAUSE**

On June 17, 2022, this Court ordered Plaintiff Makina ve Kimya Endustrisi A.S ("MKE") to explain: (1) why service by certified mail on the Turkish defendants would be lawful given that Turkey has objected to service by mail under The Hague Service Convention; (2) the basis for exercising personal jurisdiction over the Turkish defendants; and (3) an explanation for why Defendant Metin Nerkiş is not listed in the caption. (Dkt. No. 26).

**PRELIMINARY STATEMENT**

Defendants' extensive and ongoing infringement of MKE's wordmark and logo ("MKE's Intellectual Property") is causing irreparable harm to MKE. Complaint, ¶¶ 53, 58. MKE is suffering incalculable harm in lost sales and loss of goodwill due to customer confusion and trademark infringement, harm being caused directly by Defendants' offers to sell unauthorized

and underpriced products, products that they do not intend to deliver to purchasers. Complaint, ¶¶ 48, 50, 57, 58. MKE has received numerous queries from customers who have been contacted by Defendants, some of whom have already been defrauded by Defendants after being induced into making purchases from them based on Defendants' false representations that they are authorized to sell MKE products. It is currently impossible to determine the exact number of potential customers who have been contacted by Defendants and, therefore, impossible to calculate the harm to MKE. Further, Defendants' fraudulent offers to sell underpriced MKE products, products which Defendants do not have and do not intend to deliver, has not only infringed MKE's Intellectual Property but has harmed MKE's ability to sell its merchandise at market value. Complaint, ¶¶ 45, 50, 57, 58. Finally, MKE's reputation is being harmed as a result of Defendants' infringing conduct. Consumers are being lead to believe that purportedly authorized MKE distributors are unable to fill purchase orders and are defrauding customers. Complaint, ¶ 53.

## BACKGROUND

Defendant A.S.A.P. Logistics LTD ("ASAP US") lists its principal place of business in New York and Defendant Deborah Cross ("Cross") resides in New York. Complaint, ¶¶ 10, 13. Defendants ASAP US and Cross are the American lynchpins of their Turkish co-conspirators. Even though MKE appointed authorized distributors of MKE products in the United States, such as Century Arms, Inc., Defendant Turkkey Capital Kurumsal Finans Çözümleri Limited Şirketi d/b/a Turkkey Capital Kurumsal Finans Çözümleri Limited Şirketi ("Defendant TC"), Defendant ASAP US, and Defendant ASAP Lojistik Ve Savunma Ticaret Limited Şirketi d/b/a Logistics and Defense and/or ASAP Logistics and Defense Güvenlik Hizmetleri Sanayi Ve Ticaret Limited Şirketi ("Defendant ASAP Turkey") began approaching potential buyers of ammunition,

falsely claiming that they had large quantities of MKE ammunition for sale.  None of Defendants is authorized to sell MKE products in or into the United States.  Complaint, ¶¶ 30-31, 36, 40.  Defendant TC is the corporate alter ego of Defendants Türker Küçüker ("T. Küçüker") and İlker Küçüker ("İ. Küçüker").  Similarly, Defendant Güven Acarer ("Acarcer"), and Defendant Metin Nerkiş ("Nerkiş") were personally involved in this scheme by offering MKE ammunition for sale, offers which infringed upon MKE's Intellectual Property, and offers that neither defendant intended to fill.  Complaint ¶ 6.  Further, as alter egos of the corporate entity ASAP Turkey, both Defendants Acarcer and Nerkiş, working in their individual capacities, routinely conducted, solicited, and transacted business in the State of New York, deriving substantial revenue from the sale of products.  Complaint ¶ 6.

In its initial Complaint, filed May 16, 2022, MKE alleged that Defendants were engaged in a commercial conspiracy intentionally directed at New York and throughout the United States. Complaint, ¶¶ 20-58.  MKE has transacted business under the MKE name since 1950. Complaint, ¶ 21.  Since 1963, MKE has used the MKE Intellectual Property as source identifiers for the military products available for sale in the United States.  Complaint, ¶¶ 22-24.  In sum, MKE has developed a valuable brand with substantial goodwill and public recognition in the United States.  Complaint, ¶ 27.

Working in concert, Defendants offered to sell underpriced ammunitions to potential buyers located in the United States, offers made with the intent to defraud purchasers. Complaint ¶¶ 33-58.  <u>See also</u> Decl. of Daniel A. Schnapp, Exhibit D (Defendants ASAP US and Cross offering the unauthorized sale of MKE ammunition to an American buyer).  Defendants contacted potential buyers even though none were authorized distributors of MKE products, have never been authorized distributors of MKE products, and were not authorized to act on MKE's

behalf.  Complaint ¶ 40.  Moreover, Defendants entered into purchase contracts , invoiced buyers for goods, collected deposits in connection with these invoiced goods, and eventually failed to deliver any MKE goods.  Complaint, ¶¶ 49-50.  As a result, Defendants have not only caused financial injury to MKE's business and customers but also caused irreparable injury to MKE's reputation in the American ammunition sales market.  Complaint, ¶¶ 10, 13.  In its Complaint, MKE alleges three causes of action: (1) Defendants have used, and continue to use MKE's Intellectual Property, thereby creating a false designation of association with MKE in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a); (2) Defendants' actions constitute common law unfair business competition; which have caused likelihood of confusion and public deception in the marketplace; and (3) Defendants' conduct constitutes unfair and deceptive acts in violation of New York General Business Law § 349.  Complaint, ¶¶ 59-72.

After filing its Complaint, MKE moved for a preliminary injunction and for expedited discovery.  MKE moved for this preliminary injunction to, among other things, prevent Defendants' future use of MKE's Intellectual Property in connection with their scheme to defraud American purchasers, purchasers who hoped to purchase authentic MKE ammunition and were not delivered any product, at all.  Finally, MKE moved for this preliminary injunction to prevent further damage to its reputation in the United States.

### I. MKE's Pre-Motion Request Pursuant to Federal Rule of Civil Procedure Rules 4(f)(3) and 4(h)(2) to move for Alternative Service of the Turkish Defendants

Plaintiff respectfully makes the pre-motion request to move this Court to authorize alternative service,[1] in the form of email, pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 4(f)(3) and FRCP Rule 4(h)(2).  FRCP Rule 4(f)(3) permits a court to direct service on a

---

[1] Plaintiff acknowledges that the Court has correctly noted that Turkey has objected to service under The Hague Service Convention and that such service would be inappropriate.

defendant in a foreign country by any "means not prohibited by international agreement." Similarly, FRCP Rule 4(h)(2) permits service of a foreign corporation "at a place not within any judicial district of the United States[,]" allowing for service "in any manner prescribed by Rule 4(f) for serving an individual[.]"

The Court has broad discretion in fashioning alternative means of service under FRCP Rule 4(f)(3). See S.E.C. v. Anticevic, No. 05-CV-6991(KMW), 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009). In exercising this broad discretion, the Court must consider whether the alternative method of service comports with the requirements of due process and is reasonably calculated to provide Defendants with notice and the opportunity to respond. Luessenhop v. Clinton Cnty., N.Y., 466 F.3d 259, 269 (2d Cir. 2006) (noting that service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections") (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). See Philip Morris USA Inc. v. Veles Ltd., No. 06-CV-2988(GBD), 2007 WL 725412, at *2 (S.D.N.Y. Mar. 12, 2007). Because alternative service is "neither a last resort nor extraordinary relief," MKE "is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." Elsevier, Inc. v. Siew Yee Chew, 287 F. Supp. 3d 374, 377 (S.D.N.Y. 2018) (citations omitted). In fact, "'nothing in Rule 4(f) itself or controlling case law suggests that a court must always require a litigant to first exhaust the potential for service under The Hague Convention before granting an order permitting alternative service under Rule 4(f)(3).'" Id. at 378 (quoting In GLG Life Tech Corp. Sec. Litig., 287 F.R.D. 262, 266 (S.D.N.Y. 2012)). Thus, MKE's motion for alternative service, in response to the Court's June 17, 2022 Order to Show Cause, is timely.

As this Court correctly noted, Turkey did not agree to The Hague Convention's service-by-mail provisions. Thus, service of the Turkish Defendants via The Hague Convention would certainly impose additional, lengthy delays that may span upwards of six to eight months. Stream SICAV v. Wang, 989 F. Supp. 2d 264, 280 (S.D.N.Y. 2013). Although the Turkish Defendants obtained legal counsel in the United States, who previously contacted MKE, the Turkish Defendants then reversed-course, seemingly taking advantage of Turkey's objection to service by mail to avoid liability.

Here, MKE's request for a preliminary injunction cannot be delayed for six to eight months, as Defendants' ongoing use of MKE's Intellectual Property presents an immediate and continuing threat to MKE's finances and business reputation. "Courts have frequently cited delays in service under The Hague Convention as supporting an order of alternative service under Rule 4(f)(3)," especially where using The Hague would needlessly delay one portion of the case. Stream SICAV v. Wang, 989 F. Supp. 2d at 280. MKE's request for a preliminary injunction clearly amounts to a significant portion of the instant case. Moreover, this Court has previously found that service onto Turkish defendants through postal channels to be impermissible. See, e.g., Ferrostaal, Inc. v. Haci Hassan Yardim, No.-03-CV 4886(GBD), 2006 WL 2819585, at *2 (S.D.N.Y. Sept. 29, 2006). Ultimately, Turkey's objection to service by mail, the expected delay in service under The Hague Convention, and this Court's finding that service by mail of Turkish defendants to be impermissible requires this Court to grant MKE's current motion for alternative service.

Service of the Turkish Defendants by email is "reasonably calculated, under all circumstances, to apprise [the Turkish Defendants] of [MKE's claims] and afford them an opportunity to present their objections." Elsevier, Inc. v. Siew Yee Chew, 287 F. Supp. 3d at

6

379 (citations omitted).  If MKE can demonstrate "that the email is likely to reach the defendant," then "[s]ervice by email alone comports with due process."  <u>Fisher v. Petr Konchalovsky Foundation, et al.</u>, No. 15-cv-9831(AJN), 2016 WL 1047394, at *2 (S.D.N.Y. Mar. 10, 2016) (citations omitted).  Here, the email is likely to reach the Turkish Defendants because the Turkish Defendants actively use their respective email addresses.  For example, the Turkish Defendants contacted prospective American buyers via email with their fraudulent offers to sell MKE products.  Further, email service is particularly appropriate in this instance because the Turkish Defendants "engage in online business and regularly communicate with customers through functional email addresses."  <u>Elsevier, Inc. v. Siew Yee Chew</u>, 287 F. Supp. 3d at 379.  Email is not only likely to reach the Turkish Defendants but is also that email service is particularly appropriate because of the Turkish Defendants' regular email communication with prospective consumers.  Finally, while Turkey has objected to Article 10(a) of The Hague Convention, which allows for service via mail, "courts have routinely recognized that such objections do not extend to service by email."  <u>Elsevier, Inc. v. Siew Yee Chew</u>, 287 F. Supp. 3d at 379 n.2.  <u>See</u> <u>FTC v. Pecon Software Ltd.</u>, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) ("Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10.").  Thus, Plaintiff respectfully requests this Court grant MKE's motion for alternative service pursuant to FRCP Rules 4(f)(3) and 4(h)(2).

## II. **This Court Retains Personal Jurisdiction over the Turkish Defendants**

MKE's Complaint and Order to Show Cause for a Preliminary Injunction and Expedited Discovery, filed May 16, 2022 and June 3, 2022, respectively, establishes a *prima facie* case of specific personal jurisdiction over each Turkish Defendant.  MKE has alleged that each Turkish

Defendant – both individual and corporate – has engaged in tortious conduct directed at New York, in violation of federal and New York state law.

> A. **Personal Jurisdiction over the Turkish Defendants Pursuant to New York's Civil Practice Law and Rules § 302(a)(1)**

This Court retains personal jurisdiction over the Turkish Defendants on the basis of Section 302(a) of New York's Civil Practice Law and Rules ("CPLR") because each Turkish Defendant has transacted business in New York, solicited consumers in New York, offered the sale of unauthorized products in New York, and caused harm to MKE's reputation and business. New York's long-arm statute, CPLR § 302, provides for personal jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." CPLR § 302(a)(1). To determine whether jurisdiction exists under CPLR § 302(a)(1), "a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks and citation omitted).

Even though the Complaint alleges that the Turkish Defendants transacted business in New York, the Turkish Defendants "need not physically enter New York State in order to transact business, so long as the defendant's activities [in New York] were purposeful." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 61 (2d Cir. 2012) (internal quotation marks and citation omitted). "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within [New York.]" Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 168 (2d Cir. 2015) (citation omitted). In fact, a "single" purposeful activity or transaction is sufficient to trigger New York's long-arm statute. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 170 (2d Cir. 2010) (citation omitted);

RV Skincare Brands LLC v. Digby Investments Limited, 394 F. Supp. 3d 376, 381-82 (S.D.N.Y. 2019) ("Courts have consistently held that proof of one purposeful transaction in New York is sufficient.").

The Turkish Defendants include: Defendant TC, Defendant ASAP Turkey, Defendant Acarer, Defendant Nerkiş, Defendant T. Küçüker, and Defendant İ. Küçüker.  Here, the Turkish Defendants purposefully availed themselves of this forum by reaching into the State of New York by affiliating themselves with ASAP US and Cross to defraud U.S. customers and exploit and manipulate the ammunition sales market, ultimately harming American purchasers.  See EMI Christian Music Grp., Inc. v. MP3tunes, LLC, 844 F.3d 79, 98 (2d Cir. 2016) (citing Chloe, 616 F.3d at 171).  See also Walden v. Fiore, 571 U.S. 277, 285 (2014) (finding jurisdiction to be proper over a defendant who has "purposefully 'reach[ed] out beyond' their State and into another by, for example, … deliberately exploi[ting] a market in the forum") (internal quotation marks and citations omitted).  Further, the Complaint is replete with detailed factual allegations demonstrating that each Turkish Defendant purposefully availed themselves of the privilege of conducting business activity within New York.  For example, the Turkish Defendants began contacting American ammunitions purchasers, falsely claiming that they had large quantities of MKE ammunition available for sale.  Complaint ¶ 33.  Moreover, the Turkish Defendants, acting in concert with ASAP US and Cross, knowingly executed a fraudulent Letter of Intent to support their false claims.  Complaint ¶ 35.  Then, Cross provided this fraudulent Letter of Intent to potential U.S. buyers to support their false assertions that Defendants were authorized to export and sell various MKE products to American purchasers.  Complaint ¶ 37.  Finally, the Turkish Defendants sent invoices to secure financial deposits from purchasers, Defendant Cross actively solicited payments in connection with these invoices, and then Defendants failed to fulfill the

purchase orders. Complaint ¶¶ 46-48. In total, the Turkish Defendants' fraud upon innocent American buyers has harmed MKE's business and reputation in the American sales market.

Ultimately, the Turkish Defendants are subject to this Court's specific personal jurisdiction because each Turkish Defendant purposefully availed itself of the privilege of doing business in New York. Each Turkish Defendant intentionally associated itself with Defendants ASAP US and Cross, both residents of New York, to defraud MKE purchasers. Moreover, upon information and belief, the Turkish Defendants derive a significant portion of their revenues through their continuing infringement of MKE's Intellectual Property. Indeed, the Turkish Defendants' fraudulent scheme, perpetrated by their improper use of MKE's Intellectual Property, constitutes a significant portion of their total respective revenues. In sum, the Turkish Defendants are subject to this Court's specific personal jurisdiction because the Turkish Defendants intentionally targeted American buyers. The Turkish Defendants acted with full knowledge that they were not authorized to sell MKE products and with full knowledge that their actions constituted infringement of MKE's Intellectual Property, using New York entities to achieve their unlawful objectives.

### B. The Exercise of Personal Jurisdiction over the Turkish Defendants Comports with Fair Play and Substantial Justice

Because New York's long-arm statute confers personal jurisdiction over the Turkish Defendants, the Court must now analyze whether the exercise of this personal jurisdiction would comport with the requirements of constitutional due process. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d at 164 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The due process analysis involves two related inquiries: (1) minimum contacts and (2) reasonableness. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d at 164.

The minimum contacts inquiry has two prongs: (1) whether Defendants purposefully availed themselves of the privilege of doing business in the forum, thus invoking the benefits and protections of New York's laws; and (2) whether the controversy at issue arose from or relates to Defendants' conduct in New York. U.S. Bank Nat'l Ass's v. Bank of Am. N.A., 916 F.3d 143, 150 (2d Cir. 2019) (internal quotation marks and citations omitted). As discussed above, the Turkish Defendants purposefully availed themselves of the privilege of doing business in New York, invoking the benefits and protection of New York law. Additionally, MKE's Complaint and Motion for Preliminary Injunction includes allegations that the Turkish Defendants offered to sell unauthorized products that infringed upon MKE's Intellectual Property to American consumers.

Alternatively, the second prong of the minimum contacts inquiry is satisfied by MKE's allegations that Defendants conspired to defraud American consumers. Indeed, the forum contacts of one conspiracy member may be imputed to co-conspirators where a plaintiff alleges that "(1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a [forum] to subject that co-conspirator to jurisdiction in that [forum]." Charles Schwab Corp. v. Bank of America Corp., 883 F.3d 68, 87 (2d Cir. 2018). Here, MKE alleges that Defendants Cross and ASAP US, an individual and corporate resident of New York, conspired with their Turkish counterparts in furtherance of their conspiracy to defraud purchasers, a conspiracy that infringed MKE's Intellectual Property and harmed MKE as a result. Then, Defendants began approaching potential buyers with fraudulent offers for sale. The overt actions of the Turkish Defendants, i.e. the co-conspirators, include: knowing execution of a fraudulent Letter of Intent in concert with Defendants Cross and ASAP US, knowingly having Defendant Cross deliver the fraudulent

Letter of Intent to U.S. purchasers in furtherance of their unlawful scheme, and the collection of monetary deposits from U.S. purchasers. Viewed overall, MKE's allegations show the Turkish Defendants satisfy the minimum contacts inquiry of the due process analysis.

Second, the exercise of personal jurisdiction over the Turkish Defendants also satisfies the relevant factor of reasonableness. U.S. Bank Nat'l Ass's v. Bank of Am. N.A., 916 F.3d at 150 (internal quotation marks and citations omitted). Under the reasonableness inquiry, the court evaluates: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the "interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interests of the several States in furthering fundamental substantive social policies." Id. at 151 n.5 (quotation marks and citation omitted). The first factor is the primary one. Id. at 151. Here, the Turkish Defendants would not be burdened by litigating this matter in the Southern District of New York. In fact, any purported burden to the Turkish Defendants would certainly be alleviated by the financial gain incurred by their infringement of MKE's Intellectual Property. Further, MKE's interests, New York's interests, and the United States' interests are clear based on MKE's allegations that Defendants are engaging in a wide-ranging conspiracy to defraud American buyers.

### III. MKE's Pre-Motion Request Pursuant to FRCP Rules 15(a)(2) to move for Leave to Amend the Complaint

Along with MKE's above pre-motion request pursuant to FRCP Rules 4(f)(3) and 4(h)(2), MKE respectfully makes a pre-motion request for leave to amend the Complaint and file a First Amended Complaint pursuant to FRCP Rule 15(a)(2). If granted leave to amend, MKE's First Amended Complaint will not only include Defendant Nerkiş in the case caption but will also include allegations to clarify the relationships among the Defendants based on recently discovered information. MKE respectfully submits that these allegations will also address any lingering

concern that the Court may still harbor regarding its subject matter jurisdiction over the Turkish Defendants. Ultimately, if granted leave to amend, Plaintiff's First Amended Complaint would help clarify the issues submitted for disposition to the Court.

FRCP Rule 15(a)(2) provides that a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). FRCP Rule 15(a)(2) further provides that "[t]he court should freely give leave when justice so requires." Id. Further, leave to amend "shall be freely given" under Rule 15(a) in the absence of "undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party . . . [or] futility of amendment[.]" Forman v. Davis, 371 U.S. 178, 182 (1962) (internal citations omitted). Here, MKE has neither unduly delayed in requesting leave to file the First Amended Complaint nor requests leave in bad faith. Further, Defendants would suffer no prejudice as Defendants have not yet been served. Thus, MKE respectfully requests that the Court grant MKE's pre-motion request to move for leave to amend its Complaint, in accordance with the liberal rule that such leave to amend shall be freely granted.

## CONCLUSION

For the foregoing reasons, MKE respectfully requests that this Court (i) grant MKE's pre-motion request to move for alternative service of the Turkish Defendants pursuant to FRCP Rule 4(f)(3) and FRCP Rule 4(h)(2); and (ii) grant MKE's pre-motion request to move for leave to amend the Complaint pursuant to FRCP Rule 15(a)(2).

If MKE's pre-motion request to move for leave to amend the Complaint, Plaintiff respectfully submits that the additional allegations contained within its First Amended Complaint would further establish that this Court retains personal jurisdiction over each named Turkish Defendant.

Dated: June 22, 2022

        Respectfully submitted,

        **NIXON PEABODY LLP**

        By: /s/ Daniel A. Schnapp
        Daniel A. Schnapp
        Alper Tosun
        55 W. 46th Tower 46
        New York, New York 10036
        Telephone: (212) 940-3000
        dschnapp@nixonpeabody.com
        atosun@nixonpeabody.com

        *Attorneys for Plaintiff*